# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CAPTAIN CHERRY DAVID VERDIN | * | |
| Plaintiff | * | CASE NO. |
| | * | |
| Versus | * | |
| | * | SECTION |
| BP, plc, BP PRODUCTS NORTH AMERICA, INC., | * | |
| BP AMERICA, INC., TRANSOCEAN, LTD., | * | |
| TRANSOCEAN OFFSHORE DEEPWATER | * | MAGISTRATE |
| DRILLING, INC., TRANSOCEAN DEEPWATER, | * | |
| INC., HALLIBURTON ENERGY SERVICES, INC., | * | |
| AND CAMERON INTERNATIONAL | * | JURY DEMAND |
| CORPORATION f/k/a COOPER CAMERON | * | |
| CORPORATION | * | |
| | * | |
| Defendants | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## **COMPLAINT**

NOW COMES PLAINTIFF, Captain Cherry David Verdin (hereinafter, "Captain Verdin"), a person of the full age of majority and member of the American Indian Tribal Community of Pointe-aux- Chenes, Louisiana to bring this civil action, through undersigned counsel, against the Defendant Parties identified below and with respect represents:

I.

## INTRODUCTION

1.

Captain Verdin brings this civil action to recover full legal damages as a result of the catastrophic oil spill that occurred subsequent to the explosion and sinking of the semi- submersible mobile drilling vessel, Deepwater Horizon (hereinafter, "Deepwater Horizon") on April 20, 2010, at approximately 10:00 P.M., central time, on the outer Continental Shelf, approximately forty miles south of the Louisiana coastline.  Following the sinking of the Deepwater Horizon, approximately 60,000 barrels of crude oil continue to leak each day from the well upon which the Deepwater Horizon had been performing drilling and completion operations.  The fast-moving oil slick continues to increase in size and, at present, is reported to at present to threaten the coastal area of each and every state bordering the Gulf of Mexico.  More importantly, the continuing oil spill has now invaded the Louisiana coastline and caused disastrous consequences to the marine environments, coastal wetlands and estuarine hatcheries of the State of Louisiana, all of which are critical to the workplace, subsistence and livelihood of Captain Verdin.

II.

## PARTIES

2.

Captain Verdin is a native American Indian and lifelong resident and member of the Indian Tribal Community of Pointe -aux-Chenes, Louisiana and has always earned his livelihood as a seaman and commercial fisherman in the Gulf of Mexico and within the "coastal zone, "as that term is defined in 43 U.S.C. §1331(e).  Captain Verdin operates his fishing and shrimping business from his personally owned commercial fishing vessel, the F/V "Captain Billy Bob," Louisiana Registration Number La-8077-FU and has always maintained current, Official Louisiana Commercial Fishing License Numbers 368545, 368546 368547 and 368548.  As a direct result of the events described  herein, Captain Verdin has suffered and will continue to suffer substantial legal damages as are more fully described below.

3.

Made Defendants herein are the following:

(a) BP, plc ("BP"), a foreign corporation doing business in the State of Louisiana and within this judicial district;

(b) BP Products North America, Inc. ("BP Products") a foreign corporation doing business in the State of Louisiana and within this judicial district;

©) BP America, Inc. ("BP America"), a foreign corporation doing business in the State of  Louisiana and within this judicial district;

(d) Transocean, Ltd., ("Transocean, Ltd.") a foreign corporation doing business in the State of Louisiana and within this judicial district;

(e) Transocean Offshore Deepwater Drilling, Inc. ("Transocean Offshore"), a foreign corporation doing business in the State of Louisiana and within this judicial district;

(f) Transocean Deepwater, Inc. ("Transocean Deepwater"), a foreign corporation doing business in the State of Louisiana and within this judicial district;

(g) Halliburton Energy Services, Inc. ("Halliburton"), a foreign corporation doing business in the State of Louisiana and within this judicial district; and

(h) Cameron International Corporation f/k/a Cooper-Cameron Corporation ("Cameron"), a foreign corporation doing business in the State of Louisiana and within this judicial district.

III.

**JURISDICTION AND VENUE**

4.

Jurisdiction is vested herein pursuant to:

1.  28 U.S.C. §1332 because the matter in controversy exceeds the statutory legal minimum, exclusive of interest and costs;

2.  28 U.S.C. §1331, because the claims asserted herein arise under the laws of the United States of America, including the laws of the State of Louisiana which, pursuant to 43 U.S.C. §1331 (f)(1) and 1333(a)(2) have been declared to be the laws of the United States for that portion of the outer Continental Shelf from which the oil spill originated;

3.  43 U.S.C. §1331(1), which extends exclusive Federal jurisdiction to the outer Continental Shelf and;

4.  28 U.S.C. § 1333 because the matter involves claims under the General Maritime Law.

5.

Venue is vested herein pursuant to 28 U.S.C. §1391(a) (2) because all the asserted acts of commission and omission occurred in this judicial district.

IV.

**FACTUAL ALLEGATIONS**

6.

At all times relevant, BP, BP Products and BP America (collectively "BP") were the holders of a lease granted by the United States Minerals Management Service that authorized and permitted BP to drill for oil and perform oil production related operations and BP was, in fact, conducting such oil related operations on April 20, 2010 at the time of the well blowout and explosion and at the site from which the subject oil spill now originates.

7.

At all times relevant, Transocean, Ltd., Transocean Offshore and Transocean Deepwater (collectively, "Transocean") owned, manned, possessed, managed, controlled, chartered and/or operated the Deepwater Horizon, a semi-submersible mobile drilling vessel which was performing drilling and completion operations for BP, BP Products and BP America in the Gulf of Mexico on the outer Continental Shelf at the time of the above well blowout and explosion on April 20, 2010 and at the site from which the subject oil spill now originates.

8.

At all times relevant, Cameron manufactured or supplied the blowout preventers that were installed and placed in use at the wellhead on April 20, 2010 at the time of the well blowout and explosion and at the site from which the subject oil spill now originates.

9.

At all times relevant, Halliburton was engaged in cementing operations aboard the Deepwater Horizon for the subject well and installing of a well cap on April 20, 2010 and at the time of the well blowout and explosion.

V.

**FIRST CAUSE OF ACTION**

AND NOW, Captain Verdin reiterating each and every allegation set forth above with the same force and effect as if fully copied herein alleges this first cause of action based on the Louisiana, Federal and General Maritime Law of Negligence and with respect represents:

10.

The explosion aboard the Deepwater Horizon and resulting oil spill was proximately and legally caused by the concurrent negligence and fault of the all Defendants in the following non-exclusive particulars:

a.   Failing to operate the Deepwater Horizon safely and properly;

b.   Failing to inspect the Deepwater Horizon properly to assure that his equipment and personnel were fit for all intended purposes;

c.   Failing to implement and enforce Federal and State safety rules and regulations pertaining to the safe work operation aboard the Deepwater Horizon which, would have prevented the fire, explosion, and oil spill;

d.   Failing to take appropriate action to avoid or mitigate the vessel fire, explosion and well blowout;

e.   Failing to insure that the Deepwater Horizon, her gear, rigging, appurtenance and equipment were seaworthy, safe and free from defects;

f.   Failing to timely warn of foreseeable risks;

g.   Failing to bring the oil release and spill under control;

h. Failing to provide appropriate well blowout prevent equipment;

I. Failing to observe warnings that would have indicated excessive well pressures;

j. Failing to anticipate and observe obvious signs of danger;

k. Failing to monitor or other test the blowout preventers to insure operation in the event of a blowout:

l. Operating the Deepwater Horizon with poorly trained, untrained and unlicensed personnel;

m. Operating the Deepwater Horizon in such a manner that a fire and explosion occurred causing her to sink and resulting in an oil spill;

n. Acting in a careless, reckless and negligent manner without due regard for the safety of others:

o. Negligently training and hiring personnel;

p. Negligently implementing required policies and procedures to safely conduct drilling operations in the Gulf of Mexico;

q. Providing blowout preventers that failed to work;

r. Conducting well and well cap cementing operations unsafely and improperly;

s. Acting in a manner that justifies imposition of punitive damages; and

t. Such other acts of commission and omission that will be shown at the trial of this matter.

Case 2:10-cv-01841-CJB-SS   Document 1   Filed 06/28/10   Page 8 of 12

11.

In addition to all of the above, it is also specifically alleged that Defendant Halliburton negligently, unsafely and hastily performed cementing operations aboard the Deepwater Horizon on April 20, 2010 which permitted gas and well pressure to increase and contributed to the well blowout, explosion and resulting oil spill.

12.

In addition to all of the above, it is also specifically alleged that Defendant Cameron supplied defective blowout preventers that failed to engage or otherwise operate as intended upon well blowout and explosion. As such, Cameron is also responsible for all resulting legal damages pursuant to the Louisiana Products Liability Act.

13.

In addition to all of the above, it is also specifically alleged that all resulting legal damages were proximately caused by the violations of numerous safety statutes and regulations by all Defendants, including but not limited to regulations that require the testing of blowout preventers at regular intervals and those specific safety statutes and regulations enacted by OSHA and the United States Coast Guard. As a result and as a matter of law, all defendants are strictly responsible for negligence *per se.*

14.

In addition to all of the above, and in the alternative, the explosion, sinking of the Deepwater Horizon and resulting oil spill were caused by defective equipment, including the blowout preventers that were in the care, custody, control and *garde* of all Defendants. Accordingly, Defendants knew or should have known of such defects and are, therefore, strictly liable for all resulting legal damages.

15.

In addition to all of the above, and in the alternative, there can be no other possible conclusion other than that the explosion, sinking of the Deepwater Horizon and resulting oil spill were proximately caused by acts of commission or omission of all Defendants and that such acts are within the exclusive knowledge and control of the Defendants.  Moreover, the subject disastrous events and related oil spill would not have occurred had the Defendants properly exercised the high degree of care required of them. Accordingly, the doctrine of *res ipsa loquitur* is specifically pleaded herein.

16.

In addition to all of the above, the acts of all Defendants described herein were so wanton or grossly negligent, punitive damages are warranted and appropriate under State, Federal and Maritime law.

17.

As a direct result of all that is described herein, Captain Verdin, through no fault of his own, has sustained a past earning loss, the substantial loss of future earning capacity, extreme mental anxiety, emotional deficits, the loss of the enjoyment of life, and will continue to sustain all such damages in the future and is fully entitled to recover all such legal damages from Defendants as a matter of law.

VI.

## SECOND CAUSE OF ACTION

AND NOW, Captain Verdin reiterating each and every allegation set forth above with the same force and effect as if fully copied herein alleges this second cause of action based on Federal Law, more specifically, The Oil Pollution Act and with respect represents:

18.

The Oil Pollution Act, 33 U.S.C. ' 2702 imposes liability upon a responsible party for a facility from which oil is discharged into or upon navigable waters or adjoining shorelines for all damages that result from such incident.

19.

Under Federal law, BP is the responsible party. *Ipso facto* BP is liable pursuant to The Oil Pollution Act, Section 2702 for all the damages that result from the oil spill.

20.

Section 2702(b)(2)©) of the Oil Pollution Act provides for the recovery of "damages for subsistence use of natural resources, which shall be recoverable by any claimant who so uses natural resources which have been injured, destroyed, or lost, without regard to the ownership or management of the resources.

21.

Section 2702(b)(2)(E)  the Oil Pollution Act  provides for the recovery of Adamages equal to the loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources which shall be recoverable by any claimant."

22.

As a direct result of the oil spill and the related closure of such natural resources by the State and Federal governments, Captain Verdin has been unable to use the affected natural resources for his livelihood and subsistence.  Accordingly, Captain Verdin has sustained a past loss of earnings, a substantial loss of future earning capacity and is fully entitled to recover all such damages from the responsible party, BP as a matter of law.

VII.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Captain Cherry David Verdin prays that all Defendants be served with a copy of this complaint, and after due proceedings had, there be judgment in his favor and against Defendants, BP, plc, BP Products North America, Inc., BP America, Inc., Transocean, Ltd., Transocean Offshore Deepwater Drilling, Inc., Transocean Deepwater, Inc., Halliburton Energy Services, Inc., and Cameron International Corporation f/k/a Cooper Cameron Corporation jointly, severally and *in solido* for all legal damages, including punitive damages as are reasonable in the premises together with legal interest  from the date of damage, full litigation costs and all general and equitable relief.  Captain Cherry David Verdin also prays for Trial by Jury on all issues.

Respectfully submitted,

UHALT AND RECK
A Partnership of Law Corporations

/s/ GOTHARD J. RECK (La Bar 11415)
Attorney for Captain Cherry David Verdin
634 Carondelet Street
New Orleans, Louisiana 70130
(504) 581 5444
Email: sageheart@msn.com